UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROSALIND HAIRSTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-382 |
| | § | |
| PETE GEREN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendant's Motion for Summary Judgment. (D.E. 16.) For the reasons stated herein, Defendant's Motion is GRANTED and this action is DISMISSED.

### I.   Jurisdiction

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff brings this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

### II.   Factual Background

In January 2004, Plaintiff, an African-American female, began her employment at the Corpus Christi Army Depot ("CCAD") as an Administrative Support Assistant in the Environmental Litigation Office. (D.E. 1 ¶ 10.) Upon arriving at CCAD from her previous post in Europe, Plaintiff contends that her new co-workers were "shocked that she was African American," because they thought she sounded British when they spoke with her on the phone prior to her arrival. (D.E. 17 at 2-3; Hairston Dep. at 33:4-14.) Several people worked in the office, including secretary Delia Gonzalez and co-worker Elva Solis. (D.E. 17 at 2.) Although Ms. Solis was initially friendly towards Plaintiff

(Hairston Dep. at 34:22-25), Plaintiff alleges that Ms. Solis soon began to use profanity in her presence.  Plaintiff stated in her deposition that she "was sitting in the office and Ms. Solis came in yelling MF-words, F-words, B-words, all kinds of bad words, and yelling and screaming, and [she] found it very offensive."  In this instance, the profanity was directed towards the secretary, Ms. Gonzalez. (D.E. 17 at 4, Hairston Dep. at 35:20-23 – 36:1-7.)  Other similar instances occurred later on, and according to Plaintiff's testimony, Ms. Solis used profanity towards many people in the office. (Hairston Dep. at 37:19-25 – 38:1.)  Plaintiff testified, "Elva Solis would just every day on a daily basis come into the office cursing at whoever she wanted to curse at.  This was a daily thing with her." (Hairston Dep. at 39:14-16.)  According to Plaintiff, Ms. Solis used profanity towards an African-American male, two Hispanic males, a white female, and many others who Plaintiff could not identify by name. (Hairston Dep. at 47:17 – 48:2, 41:17-25, 42:18-23, 56:9-20, 76:5-16, 58:11-16, 59:19 – 60:4.)  Plaintiff considered this discrimination and harassment.

In addition to Ms. Solis's use of profanity, Plaintiff claims that she was humiliated "while Hispanic co-workers spoke Spanish in front of" her. (D.E. 17 at 4.)  She felt that this created a hostile work environment, explaining, "if we're in an organization where English is supposed to be spoken and I'm asking a question and you start speaking in Spanish to each other, it makes me feel like you're talking about me, and it distracts me from accomplishing a mission because I'm . . . feeling bad that you may be saying something bad about me instead of trying to help me with what we have to do." (D.E. 17 at 5; Hairston Dep. at 45:21-25 – 46:3.)  Plaintiff complained about these actions to her supervisor, Carlos Lovell, but he did not think it was serious and did not address the situation. (D.E. 17 at 6-7; D.E. 1 ¶ 11; Hairston Dep. 52:15-18.)

In April 2005, Ms. Solis allegedly began to direct profanity specifically towards Plaintiff, prompting Plaintiff to file a complaint with the Army Inspector General. Plaintiff explained in her deposition testimony, "profanity was being used, the screaming and the yelling, and it was affecting me; it was affecting my health. I had spoken with my supervisor for an entire year, almost a year and a half, and he told me he didn't think it was that serious, and he never did anything. So I just got tired of it so I filed a report." (D.E. 17 at 6; Hairston Dep. at 50:4-12.) In addition to complaining about Ms. Solis, Plaintiff also filed a complaint against Annette Ortiz, a timekeeper who she alleged was receiving pay but not reporting to work. (Hairston Dep. at 50:10-12.) Ms. Solis found out about the complaint and protested to Mr. Lovell. (Hairston Dep. at 52:2-22.) Ms. Solis also began to direct more profanity towards Plaintiff, and "fabricated all kinds of things about" Plaintiff, for example that she was leaving work early, and "banging on her door." (D.E. 17 at 8; D.E. 1 ¶ 12; Hairston Dep. at 77:9-20.)

Eventually, in an attempt to resolve the situation, Mr. Lovell moved Plaintiff to another office at CCAD, and allegedly told Plaintiff that she was not allowed to return to the Environmental Litigation Office. Plaintiff contends, however, that Ms. Solis was allowed to come to her office whenever she wanted. (D.E. 17 at 7; Hairston Dep. at 60:10-25; 74:15-21.) Plaintiff states that she was given a directive to move, even though she had not engaged in any conduct meriting disciplinary action. (D.E. 17 at 9; D.E. 1 ¶ 12; Hairston Dep. at 62:13-16.)

Plaintiff believed that Ms. Solis's use of profanity and Mr. Lovell's attempts to resolve the situation were motivated by her race because of their "demeanor" and "because . . . their words showed [her] that there was a difference in the way [she] was treated and the way Ms. Solis was treated." (D.E. 17 at 7-8; Hairston Dep. at 75: 25, 76:

1-4.) Plaintiff also states their actions occurred "[b]ecause [she] filed a complaint with the Inspector General and because [she] was an African-American female, not a Hispanic female, not a Hispanic male, but an African-American female that had stood up for something that she considered to be wrong that was bothering [her] from the doing the work that [she] needed to get done." (D.E. 17 at 8; Hairston Dep. at 77:24-25, 78:1-6.) Due to these events at work, Plaintiff had to medically retire. (D.E. 17 at 9.)

In sum, Plaintiff contends that she "was discriminated against and treated differently when she was subjected to repeated and ongoing harassment by her Hispanic co-worker, Elva Solis and her supervisor failed to take appropriate action." (D.E. 17 at 1.) The situation worsened when Ms. Solis allegedly made false accusations against Plaintiff, and Plaintiff was forced to move to a different work site even though the allegations were untrue. (D.E. 17 at 2.)

### III.     Procedural Background

On December 13, 2005, Plaintiff filed a formal charge of discrimination with her federal agency, the Army. (D.E. 1 ¶ 9; Rosalind D. Hairston v. Pete Geren, Secretary of the Army, Appeal No. 0120071372, 2008 WL 2662489, at *1 (E.E.O.C. June 26, 2008)). The agency issued a final order rejecting her claim on December 8, 2006, and Plaintiff filed an appeal with the Equal Employment Opportunity Commission ("EEOC") on January 12, 2007. Rosalind D. Hairston, 2008 WL 2662489, at *1. The EEOC issued its decision on June 26, 2008, affirming the agency's decision. Id. Plaintiff timely requested reconsideration of the EEOC decision, and a final determination affirming the earlier decision was issued on September 10, 2008. Rosalind D. Hairston v. Pete Geren, Secretary of the Army, Appeal No. 0120071372, 2008 WL 4287763 (E.E.O.C. Sep. 10, 2008).

On December 6, 2008, Plaintiff filed this lawsuit, exercised her right under 42 U.S.C. § 2000e-16(c) to file a civil action in federal district court for a violation of Title VII. Plaintiff raises two causes of action in her Complaint, one for discrimination based on race, a second for discrimination based on gender. (D.E. 1 ¶¶ 14-15.) Plaintiff did not raise a separate claim for retaliation. As the final EEOC determination on Plaintiff's case was issued on September 10, 2008, Plaintiff's filing of the Original Complaint on December 6, 2008 was within the ninety-day time period established by 42 U.S.C. § 2000e-16(c).[1] Plaintiff has thus satisfied the administrative prerequisites to bringing this action.

Defendant filed its Answer on February 25, 2009 (D.E. 12) and subsequently filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) on June 10, 2009. (D.E. 13.) The Court denied this motion on July 21, 2009. (D.E. 14.) Defendant filed the present Motion for Summary Judgment on September 15, 2009 (D.E. 16), and Plaintiff filed her response on October 5, 2009 (D.E. 17).

In its Motion for Summary Judgment, Defendant contends that Plaintiff has failed to establish a prima facie case of hostile work environment based upon her race and gender. First, Defendant contends that Plaintiff has failed to demonstrate that Ms. Solis's conduct was motivated by Plaintiff's race or gender. Defendant argues that there is no evidence linking Ms. Solis's conduct to Plaintiff's race or gender; rather, everyone in the

---

[1] In its Answer, Defendant contends that Plaintiff's action is time barred because she did not file this lawsuit within ninety days of receipt of the EEOC's decision on her appeal issued on June 26, 2008. (D.E. 12, ¶ 1.) It is well settled in this Circuit, however, that the "filing of a timely request to reopen an EEOC decision tolls the statutory time limit" in 42 U.S.C. § 2000e-16(c). Rowe v. Sullivan, 967 F.2d 186, 190 (5th Cir. 1992) (citing Donaldson v. Tennessee Valley Authority, 759 F.2d 535, 538 (6th Cir. 1985)). Where a request to reopen an EEOC decision has been made, the "final action" on the employee's complaint for purposes of 42 U.S.C. § 2000e-16(c) is the EEOC's final decision on that request. The employee may therefore file suit in district court within ninety days of receipt of that "final action." Donaldson, 759 F.2d at 538.

office, regardless of race or gender, was subjected to Ms. Solis's use of profanity. (D.E. 16 at 7-8.) Second, Defendant argues that Plaintiff has failed to demonstrate that the alleged harassment was "sufficiently severe or pervasive to alter the terms or conditions of Plaintiff's employment." (D.E. 16 at 8.) Even though Plaintiff may have found Ms. Solis's conduct offensive, Defendant argues that it is "not the type of extreme conduct that would prevent Plaintiff from succeeding in the workplace," that there is no evidence that Ms. Solis's conduct was physically threatening or that it undermined her workplace competence, and that the conduct "would not have unreasonably interfered with a reasonable person's work performance." (D.E. 16 at 9-10.) In sum, Defendant states that "Plaintiff's allegations of non-discriminatory, race and gender-neutral conduct cannot be used to support a hostile work environment claim." (D.E. 16 at 10.)

In response, Plaintiff contends that her disparate treatment by Ms. Solis and by her supervisor Mr. Lovell "can only be reasonably explained [by] Plaintiff's race, along with her gender. To accept Defendant's explanation, one would have to ignore the plain facts that show that notwithstanding all of the things done by Elva Soliz [sic], she remained employed with impunity. The words and actions as explained by Plaintiff had a direct impact on Plaintiff, which ultimately brought about her premature retirement." (D.E. 17 at 10.)

IV. Discussion

    A. **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are

material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. Plaintiff has Failed to Establish a <u>Prima Facie</u> Case of Racial or Gender Discrimination

Where an individual has been subject to discrimination in the workplace, he or she may bring a lawsuit under Title VII, 42 U.S.C. § 2000e <u>et seq</u>., based on race or gender discrimination creating a hostile work environment. To establish a hostile working environment claim, a Plaintiff must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race or gender; (4) the harassment complained of affected "a term, condition, or privilege of employment"; and (5) the "employer knew or should have known of the harassment in question and failed to take prompt remedial action." <u>See, e.g.</u>, <u>Harvill v. Westward Comm'ns</u>, 433 F.3d 428, 434 (5th Cir. 2005); <u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002). If the alleged harasser possessed supervisory authority over a plaintiff, the employer's knowledge is presumed. <u>See</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998); <u>Wyatt v. Hunt Plywood Co.</u>, 297 F.3d 405, 411 (5th Cir. 2002).

For harassment to affect a term, condition, or privilege of employment, as is necessary to support a claim for a hostile work environment under Title VII, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Harvill</u>, 433 F.3d at 434; <u>Ramsey</u>, 286 F.3d at 268 (citing <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993)). In determining whether a workplace is a hostile work environment, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harvill</u>, 433 F.3d at 434; <u>Ramsey</u>, 286 F.3d at 268 (citing <u>Harris</u>, 510 U.S. at 23). "To be actionable, the challenged conduct must be both

objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." Harvill, 433 F.3d at 434 (internal quotation marks omitted).

In Oncale, the Supreme Court explained that the "critical issue" under Title VII is "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Consistent with this approach, courts have consistently rejected claims of gender or racial harassment when the harassment is indiscriminately inflicted upon all individuals. See Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 n.2 (5th Cir. 1996) ("Sex-neutral hostile conduct cannot be used to support a hostile environment claim. **Title VII does not protect employees from hostile conduct that is not based on their protected status**.") (emphasis added); Adeshile v. Metro. Transit Authority of Harris County, No. H-06-3480, 2008 WL 112103, at *6 (S.D. Tex. Jan. 9, 2008) ("The fact that [the harasser] addressed her vulgar comments to both men and women also indicates that Plaintiff was not exposed to offensive language to which members of the opposite sex were not similarly exposed, such as would be necessary to sustain a Title VII claim."); see also Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1301-02 (11th Cir. 2007) ("[T]here was a lot of profanity, but the problem for [plaintiff's] discrimination case is that very little of it was aimed specifically at females. . . . And it is undisputed . . . that those curse words were used indiscriminately in front of, and towards, males and females alike.  It would be paradoxical to permit a plaintiff to prevail on a claim of discrimination based on indiscriminate conduct. . . . **An equal opportunity curser does not violate a statute whose concern is, as the Supreme Court has phrased it, whether members of one sex are exposed to disadvantageous**

**terms or conditions of employment to which members of the other sex are not exposed.**'") (emphasis added); Pasqua v. Metro. Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996) ("Harassment that is inflicted without regard to gender, that is, where males and females in the same setting do not receive disparate treatment, is not actionable because the harassment is not based on sex."); Jessamy v. City of New Rochelle, New York, 292 F. Supp. 2d 498, 511-12 (S.D.N.Y. 2003) ("Plaintiff admittedly does not even allege conduct of an overtly racial character by any of the defendants. . . . [T]he absence of such conduct is a factual omission that is necessarily fatal to a race-based hostile work environment claim.").

In this case, Plaintiff has failed to establish a prima facie case of racial or gender discrimination creating a hostile work environment, as she has failed to establish that the harassment complained of was based on race or gender. With respect to her claims against Ms. Solis, the deposition record clearly establishes that Ms. Solis used vulgar and profane language towards everyone in the office, regardless of race or gender. Plaintiff identified other individuals, both male and female, Caucasian, Hispanic, and African-American, along with many others she could not identify by name, who were subjected to Ms. Solis's conduct. (Hairston Dep. at 47:17 – 48:2, 41:17-25, 42:18-23, 56:9-20, 76:5-16, 58:11-16, 59:19 – 60:4.) According to Plaintiff, "Elva Solis would just every day on a daily basis come into the office cursing at whoever she wanted to curse at. This was a daily thing with her." (Hairston Dep. at 39:14-16.) She also stated that Ms. Solis's language was directed at "everybody." (Hairston Dep. at 37:23.) Plaintiff's deposition testimony thus establishes that Ms. Solis's use of profanity was indiscriminate. Moreover, there is no indication that the profanity itself was race or gender specific, or that Ms. Solis made reference to Plaintiff's race or gender. Plaintiff's vague reference to Ms. Solis's

initial "shock" upon learning she was African American and Ms. Solis's "demeanor" as evidence of a racial or gender based reason for her actions is insufficient to establish a prima facie case, particularly given the undisputed evidence that Ms. Solis used profanity towards everyone in the office.

      Plaintiff has also failed to establish that her supervisor's decision to move her to a different office was motivated by race or gender.  Plaintiff's vague reference to Mr. Lovell's "demeanor" is insufficient to demonstrate a racial or gender based motive; rather, the supervisor implemented a reasonable strategy in an attempt to resolve the problem. Even viewed in the light most favorable to Plaintiff, the evidence does not suggest that Plaintiff's race or gender influenced Mr. Lovell's decision.  Similarly, Plaintiff's claim that Ms. Solis's use of Spanish in the workplace constituted harassment also fails, as there is no evidence that this action, even if it constitutes harassment, was based on Plaintiff's race or gender.[2]

      As the Court concludes that Plaintiff has failed to demonstrate that the alleged harassment was motivated by Plaintiff's race or gender, an essential element of the prima facie case, it need not consider whether the alleged actions are "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harvill, 433 F.3d at 434.  The Court notes, however, that Title VII is not a "general civility code." Oncale, 523 U.S. at 81.  Courts have generally concluded that vulgarity or profanity in the workplace, while unfortunate, is not sufficiently "severe or pervasive" to establish a prima facie case.  See, e.g., Adams v.

---

[2] In fact, prohibiting the use of Spanish in the workplace may itself constitute a violation of Title VII.  The EEOC has stated that a rule prohibiting foreign languages in the workplace at all times is a "burdensome term and condition of employment."  The EEOC would "closely scrutinize" such a rule and "presume that [it] violates Title VII." 29 C.F.R. § 1606.7.

B&B Restaurants, Inc., No. H-07-1352, 2008 WL 4155458, at *4 (S.D. Tex. Sept. 4, 2008) ("Title VII is not a general civility code, and does not convert every workplace argument into a federal case, even when curses and insults are exchanged."); see also, e.g., Ziskie v. Mineta, 547 F.3d 220, 228 (4th Cir. 2008) ("Profanity, while regrettable, is something of a fact of daily life.").

In sum, Plaintiff has failed to provide any evidence to demonstrate that either Ms. Solis's actions or those of Mr. Lovell in trying to resolve the problem were motivated by Plaintiff's race or gender. The Court therefore finds that Plaintiff has failed to establish a prima facie case under Title VII, and grants Defendant's Motion for Summary Judgment.

**V.     Conclusion**

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment. (D.E. 16.) This action is therefore DISMISSED.

SIGNED and ORDERED this 26th day of October, 2009.

_____
Janis Graham Jack
United States District Judge